J-S83006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CLARENCE A. GOLDSMITH | : | |
| | : | |
| Appellant | : | No. 1899 EDA 2016 |

Appeal from the Judgment of Sentence May 20, 2016
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0002554-2015

BEFORE:  GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 27, 2018**

Appellant, Clarence A. Goldsmith, appeals from the May 20, 2016 Judgment of Sentence entered in the Delaware County Court of Common Pleas following his conviction by a jury of Recklessly Endangering Another Person ("REAP"), Possessing a Prohibited Offensive Weapon, and Person Not to Possess a Firearm.[1]  He challenges the court's denial of his last-minute request for a continuance and its grant of the Commonwealth's Motion to Amend the Criminal Information.  After careful review, we affirm.

The relevant facts and procedural history of this matter are as follows. On February 23, 2015, Appellant shot and injured his girlfriend ("the

_____

[1] 18 Pa.C.S. § 2705; 18 Pa.C.S. § 908(a); and 18 Pa.C.S. § 6105, respectively.

Victim") in a bedroom in the Victim's home using a sawed-off shotgun with a barrel less than 18 inches in length. That same day, police arrested Appellant and charged him with Attempted Criminal Homicide, Aggravated Assault, REAP, Possessing a Prohibited Offensive Weapon, and Attempted Third-Degree Murder.[2] Initially, the Victim described Appellant as having shot her by accident.

Following Appellant's April 21, 2015 Preliminary Hearing, the court dismissed Appellant's Attempted Criminal Homicide and Attempted Third-Degree Murder charges, but bound the remaining charges over for trial.

On August 5, 2015, the Commonwealth filed a Motion to Amend Information to add the charge of Person Not to Possess a Firearm. After a hearing, the court granted the Motion to Amend on August 12, 2015.

On March 1, 2016, prior to jury selection on the first day of Appellant's trial,[3] Appellant's counsel made an oral Motion for Continuance to allow him more time to prepare for trial. Counsel alleged that he had only just learned that the Victim had changed her statement and intended to testify that Appellant had shot her purposefully—rather than accidentally as she had

_____

[2] 18 Pa.C.S. § 2501; 18 Pa.C.S. § 901(a); 18 Pa.C.S. § 2702(a)(1); 18 Pa.C.S. § 2705; 18 Pa.C.S. § 908(a); 18 Pa.C.S. § 2502(c); and 18 Pa.C.S. § 901(a), respectively.

[3] The court bifurcated Appellant's trial. The jury first determined Appellant's guilt as to the REAP, Possessing a Prohibited Offensive Weapon, and Aggravated Assault charges. Then it determined Appellant's guilt as to the Person Not to Possess a Firearm charge.

maintained since the incident occurred. Appellant's counsel indicated that, based on the Victim's changed account, he thought he might "need to hire a ballistics expert . . . to explore the feasibility" of the Commonwealth's theory of the shooting.[4] N.T. Trial, 3/1/16, at 11-12.

The Commonwealth disputed that Appellant would need to hire a ballistics expert, claiming that the change in the Victim's statement did not implicate her location relative to Appellant at the time of the shooting. Importantly, the Commonwealth also represented to the court that it had notified Appellant's counsel about the Victim's changed story prior to that day,[5] and that it had provided Appellant's counsel with transcripts of recorded prison phone calls between Appellant and the Victim, the contents of which the Commonwealth argued should have notified Appellant that the Victim's statement was evolving. *Id.* at 13. The Commonwealth informed the court and counsel that it would produce to counsel a signed written

---

[4] This Court's review of the Notes of Testimony reveals that, while Appellant's counsel thought he might need to hire a ballistics expert, he had not, prior to the start of Appellant's trial, actually consulted with such an expert to "explore" whether the averments contained in the Victim's new statement were "plausible or not plausible based upon the evidence[.]" N.T. Trial, 3/1/16, at 14. Thus, counsel did not proffer to the court that an expert witness would actually provide any exculpatory evidence or testimony.

[5] The Commonwealth did not specify when exactly it had notified Appellant's counsel that the Victim had changed her statement. Rather, counsel for the Commonwealth told the court, "I notified defense counsel – it wasn't just today – about how she changed her story." N.T. Trial, 3/1/17, at 13. Appellant's counsel did not dispute this representation.

statement from the Victim prior to the opening of court the next day, and, if necessary, make the Victim available to counsel for questioning after he read her statement. The court denied Appellant's Motion for Continuance, and proceeded to jury selection.

At the close of trial and after delivering his closing argument, Appellant's counsel argued that the court should not submit the Person Not to Possess a Firearm charge to the jury because, although the court had granted the Commonwealth's Motion to Amend Information to include this charge, the Commonwealth failed to file an amended Information. N.T. Trial, 3/3/16, at 43-44. The Commonwealth asserted that the court's order granting its Motion to Amend was sufficient to amend the Information. *Id.* at 44. The trial court agreed with the Commonwealth that its "approval constitutes an amendment of the Information[,]" and, thus, denied Appellant's request. *Id.* at 45.

Appellant also moved for a Judgment of Acquittal on all charges based on the eleventh-hour disclosure by the Commonwealth of the Victim's changed statement. The court also denied this Motion.

The jury returned verdicts of guilty on the REAP, Possessing a Prohibited Offensive Weapon, and Person Not to Possess a Firearm charges. The jury was unable to reach a verdict on the Aggravated Assault charge.

- 4 -

On May 20, 2016, the court sentenced Appellant to an aggregate term of 7 to 14 years' incarceration.[6] Appellant did not file a Post-Sentence Motion. Rather, on June 16, 2016, Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

1. Did the [t]rial [c]ourt err in denying a defense motion for a continuance prior to trial because counsel did not timely receive the statement of the alleged victim which dramatically differed from her prior statements and her testimony at the preliminary hearing?

2. Did the [t]rial [c]ourt err in allowing the jury to reach a verdict on Person Not to Possess a Firearm since the Commonwealth never charged [Appellant] with this offense?

Appellant's Brief at 5.

In his first issue, Appellant challenges the court's decision to deny his Motion for a Continuance. Appellant acknowledges that he moved for a continuance less than 48 hours prior to the commencement of trial, but claims that he requested a continuance as soon as he became aware of the need for one. *Id.* at 13, *citing* Pa.R.Crim.P. 106(D). He argues that "the interests of justice required sufficient time for defense counsel to prepare for the case" as "the facts to be presented by the Commonwealth [had]

---

[6] The court sentenced Appellant to two consecutive terms of 1-2 years' incarceration on the REAP and Possessing a Prohibited Offensive Weapon convictions and a consecutive term of 5-10 years' incarceration on the Person Not to Possess a Firearm conviction.

dramatically changed[,]" and that the court's denial of a continuance made it difficult for him to impeach the Victim's testimony *Id.* at 13-14.

Appellant also complains that the court's denial of his Motion prevented him from obtaining a ballistics expert witness to rebut the Victim's testimony that Appellant had intentionally shot her.

Our Supreme Court has explained our standard of review for denials of requests for continuances.

> The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of discretion. As we have consistently stated, an abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record[.]

*Commonwealth v. McAleer*, 748 A.2d 670, 673 (Pa. 2000) (internal quotations and citations omitted). Accordingly, "[i]t has long been the view of [the Pennsylvania Supreme Court] that a decision to grant or deny a continuance to secure a witness is a matter within the sound discretion of the trial court . . . ." *Commonwealth v. Small*, 741 A.2d 666, 682 (Pa. 1999). A reviewing appellate court considers the orderly administration of justice as well as the defendant's right to have adequate time to prepare a defense. *Id.* at 682-83. The court must also consider the following factors:

> (1) the necessity of the witness to strengthen the defendant's case;
>
> (2) the essentiality of the witness to the defendant's defense;

(3) the diligence exercised to procure his or her presence at trial;

(4) the facts to which he or she could testify; and

(5) the likelihood that he or she could be produced at court if a continuance were granted.

*Id.* at 683 (quotation omitted).

"A bald allegation of an insufficient amount of time to prepare will not provide a basis for reversal of the denial of a continuance motion." **Commonwealth v. Ross**, 57 A.3d 85, 91 (Pa. Super. 2012). "Instead, an appellant must be able to show specifically in what manner he was unable to prepare his defense or how he would have prepared differently had he been given more time." *Id.* (quotation omitted).

Appellant's claim that he required a continuance in order to impeach the Victim's testimony is belied by the record. Our review of the Notes of Testimony indicates that both the Commonwealth and Appellant's counsel questioned the Victim extensively about her changed account of the incident. In particular, on direct examination, the Commonwealth asked the Victim why she had previously stated that Appellant had shot her accidentally.[7] N.T. Trial, 3/2/16, at 77-79. The Victim explained that she was trying to prevent Appellant from going to jail because she loved him, and that

---

[7] The court permitted the introduction of the Victim's prior statement by stipulation at trial. The parties stipulated that, on October 20, 2015, the Victim stated: "Why is [Appellant] still in jail? It was an accident." N.T. Trial, 3/2/16, at 123.

Appellant had asked her to lie. *Id.* at 78-79. The Victim testified that she later gave a handwritten statement, in which she indicated that Appellant shot her intentionally while high on PCP. *Id.* at 80-81.

Further, the court permitted the Commonwealth to play audio recordings of phone calls, which took place between Appellant and the Victim while Appellant was incarcerated in Delaware County Prison. On those calls, the Victim repeatedly refers to the incident as having been an accident. The Victim testified that she referred to the incident as an accident "because of what [Appellant] told the police and from what he wanted me to tell the police. So I know that I had to say 'accident,' you know. Like I said, I was in love with this man. I wanted him home." *Id.* at 88. *See also id.* at 89 (where the Victim explains that Appellant referred to the Victim reporting this incident as an accident as a "sacrifice"); *id.* at 92 (where the Victim explains that when she told Appellant on the phone that she "started to remember something" she meant she remembered "walking in that room with the gun pointed at [her] and him shooting [her.]").

Appellant's counsel cross-examined the Victim extensively about the change to her account of the incident, and her purported reasons for doing so, including highlighting the testimony she gave at Appellant's Preliminary Hearing that the shooting was accidental. *Id.* at 101-12. Appellant's counsel also cross-examined the Victim about telephone calls with Appellant after the shooting. Given the vigor with which Appellant's counsel cross-examined the Victim about her changed account of the incident, we conclude

that Appellant's ability to impeach the Victim was not hampered and he, thus, suffered no prejudice as a result of the denial of his request for a continuance.

With respect to his alternate claim that the trial court's denial of his Motion for a Continuance prevented him from obtaining an expert witness, Appellant baldly claims that, as in *Commonwealth v. Metzger*, 450 A.2d 981 (Pa. 1982), "the [c]ourt's denial of the continuance made it impossible to obtain a witness to rebut the testimony of" the Victim. Appellant's Brief at 15. However, Appellant does not assert that he had consulted with an expert witness who would provide any exculpatory evidence. Appellant also failed to set forth the facts to which an expert could testify, or explain how an expert witness was necessary to or would have strengthened Appellant's defense. *See Small*, *supra.* Appellant's bald allegation does not provide the basis for a reversal of the court's denial of the Motion for a Continuance. *See Ross*, *supra*.

Moreover, we are unpersuaded by Appellant's reliance on *Metzger* in support of his argument that he needed a continuance to obtain a ballistics expert as a result of the Victim's changed account of the incident. In *Metzger*, the Commonwealth had charged the defendant with first-degree murder. The defendant requested a continuance mid-trial to obtain an expert witness to rebut the testimony of the medical examiner. The Court, "look[ing] to the nature of the crime and to the surrounding circumstances" to determine whether the trial court abused its discretion in denying the

defendant's motion for a continuance, observed that the gravity of the first-degree murder charge, coupled with the fact that the Commonwealth's case against the defendant was entirely circumstantial, "combine[d] to create a unique situation." *Metzger*, 450 A.2d at 984. The Court observed that "the Commonwealth could not show [the defendant's] active participation in, or present knowledge of the crime, nor could the prosecution place [the defendant] at the crime scene when the killing took place." *Id.* Additionally, a defense witness testified to having committed the murder and completely exculpated the defendant. *Id.* In response to the exculpatory testimony of the defendant's witness, the Commonwealth presented the rebuttal testimony of the medical examiner who disputed that the victim's death had been caused as the witness described. Given the particular facts in *Metzger*, the Supreme Court concluded that the interests of justice required a brief continuance so that the defendant could obtain an expert pathologist to rebut the medical examiner's testimony. *Id.*

The facts of the instant matter are plainly distinguishable from those in *Metzger*. Here, the Commonwealth's case was not based purely on circumstantial evidence, but rather on the direct testimony of the Victim, which the jury found credible. Moreover, in both versions of the Victim's account, the shooting took place in a bedroom in her home with the Victim and Appellant in close proximity to each other. Thus, we agree with the trial court's conclusion that "regardless of the [V]ictim's account of [Appellant's] actions during the incident, [Appellant's] counsel could attack the

- 10 -

Commonwealth's arguments at trial without the assistance of an expert or further investigation[.]" Trial Ct. Op., 9/27/16, at 7. Accordingly, Appellant is not entitled to relief on this claim.

In his next issue, Appellant purports to challenge the court's decision to submit the Person Not to Possess a Firearm charge to the jury where the Commonwealth failed to file a formal Amended Information including this charge. However, in his Brief, Appellant actually focuses his argument on his allegation that the court erred in granting the Commonwealth's Motion to Amend Information. Appellant claims that, because the crime of Person Not to Possess a Firearm contains a new or different element not present in the original information—the fact of a prior conviction—the court erred in permitting the Commonwealth to amend the Information. Appellant's Brief at 16-17. Appellant argues that his conviction of Person Not to Possess a Firearm resulted in a far lengthier sentence than he would have received otherwise, which he claims "implicate[s] the need for ample notice to [him] and time for preparation for trial with the additional offense[.]" *Id.* at 17.

To the extent Appellant purports to claim that the Commonwealth did not amend the Criminal Information, this claim fails. On August 5, 2015, the Commonwealth filed a Motion to Amend Information to add the charge of Person Not to Possess a Firearm.[8] On August 12, 2015, the trial court

_____

[8] 18 Pa.C.S. § 6105.

granted the Commonwealth's Motion. Our review of the trial court docket reveals the inclusion of the Person Not to Possess a Firearm charge with the notation "Proceed to Court (Amended Information)." *See* Trial Ct. Docket at 3. This docket entry belies Appellant's assertion that the Information was never amended.

With respect to Appellant's claim that the court erred in permitting the Commonwealth to amend the Criminal Information, the version of Pennsylvania Rule of Criminal Procedure 564 in effect at the time the court ruled on the Commonwealth's Motion provided as follows:

> The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as necessary in the interests of justice.

Pa.R.Crim.P. 564.[9]

"[T]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last

---

[9] The legislature amended Pa.R.Crim.P. 564 on December 21, 2016, effective December 21, 2017. Criminal Rule 564 now provides that "[t]he court may allow an information to be amended, provided that the information as amended does not charge offenses arising from a different set of events and that the amended charges are not so materially different from the original charge that the defendant would be unfairly prejudiced. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice."

minute addition of alleged criminal acts of which the defendant is uninformed." ***Commonwealth v. Sinclair***, 897 A.2d 1218, 1221 (Pa. Super. 2006) (citation omitted).  To achieve this goal, courts consider:

> Whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information.  If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct.  If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

***Id.*** (citations and footnote omitted).

We examine particular factors in determining whether a defendant was prejudiced by an amendment to a criminal information.  These include:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Id.*** at 1223 (citation omitted).

The offenses at issue in the instant case are the original charge of Possessing a Prohibited Offensive Weapon, 18 Pa.C.S. § 908(a), and the charge of Person Not to Possess a Firearm, 18 Pa.C.S. § 6105(a)(1), added upon amendment of the Information.  A person commits the offense of

Possessing a Prohibited Offensive Weapon if "except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon." 18 Pa.C.S. §908(a). Subsection (c) defines "firearm" as "[a]ny weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 908(c). It also defines "offensive weapon" as "[a]ny bomb, grenade, machine gun, sawed-off shotgun with a barrel less than 18 inches, firearm specially made or specially adapted for concealment or silent discharge[.]" *Id.*

A person commits the crime of Person Not to Possess a Firearm if he has a previous conviction of an offense, including Burglary, and he possesses, uses, controls, sells, transfers, or manufacturers, or obtains a license to possess, use, control, sell, transfer, or manufacture a firearm in Pennsylvania. 18 Pa.C.S. § 6105(a)(1). Section 6105(i) defines "firearm" as including "any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S. § 6105(i).

Applying the statutory language defining the relevant offenses in the instant case, our review indicates that the criminal offenses specified in the original Information involve the same basic elements as the criminal offense contained in the Amended Information. The only difference between them is the additional finding of a prior conviction required in 18 Pa.C.S. § 6105.

- 14 -

In reviewing the factors listed above, we cannot conclude that Appellant suffered prejudice by the addition of the Person Not to Possess a Firearm charge. The amended criminal offense arose out of the same factual background as the offenses specified in the original information—Appellant, in possession of a sawed-off shotgun with a barrel less than 18 inches, used that firearm to shoot the Victim. This weapon fits the definitions set forth in both 18 Pa.C.S. § 908(a) and 18 Pa.C.S. § 6105.

Moreover, Appellant was certainly aware that he had previously been convicted of Burglary and was under the supervision of the Courts of Delaware County when the instant incident occurred. He was, thus, aware that he was a person prohibited from possessing a firearm.

The original charge and the additional charge are, as the trial court observed, "nearly identical in their elements." Trial Ct. Op. at 10. Thus, the factual scenario developed by the Commonwealth at Appellant's Preliminary Hearing in support of the Possessing a Prohibited Offensive Weapon charge included the predicate facts to support the Person Not to Possess a Firearm charge. Because of the interrelatedness of the elements, the addition of this charge would not have warranted any change in defense strategy.

Last, Appellant was not prejudiced when the court granted the Commonwealth's Motion to Amend because the amendment occurred almost seven months prior to the commencement of Appellant's March 1, 2016 trial.

For the foregoing reasons, we conclude that the trial court did not err in allowing the Commonwealth to amend the original Information and add

the Person not to Possess a Firearm charge. Thus, Appellant is not entitled to relief on this issue.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/18